The next case that we'll hear this morning is 20-1401 Atlas Biologicals v. Biowest. Counsel Korthon, if you'd make your appearance. Thank you, Your Honor. Good morning. Good morning. If it please the court and counsel, I'd also like to give my congratulations to the youngsters in the courtroom. They have a big task ahead of them if you're a clerk. And as a matter of full disclosure, I'd also like to state that I had the honor of being home counsel with Judge Matheson's father in a case 30 years ago in Utah. One of the downwinder cases, so I'm starting to feel old in this. This is a case that involves an effort, a creative effort by a corporation to defeat the sale by a shareholder of the shareholder's interest in that corporation to a competitor corporation. The corporation Atlas brought an action in this court alleging essentially only state law claims. There are no independent federal law claims supporting this action. As a result, there are three issues that we believe are before the court. An issue first of subject matter jurisdiction because there is no federal claim to support it. And the second one would be an issue of standing because the corporation is attempting to challenge the contract for the sale of the shares to the competitive corporation as a third party. So it's an issue of third party standing. And then finally there's an issue under the UCC regarding the sale because the corporation that refused to issue the stock and then refused to register the stock at the sale. So it's challenging the sale as undifferentiated shares. And that they violate the registration requirements of the UCC. And so there is an issue here in terms of the UCC whether or not the corporation itself should be allowed to frustrate UCC compliance. On the first issue, we have a recent decision just five days ago by the U.S. Supreme Court in California in Texas on the issue of standing in a declaratory judgment action. And in that one, the Supreme Court said that the state of Texas and the other parties lacked standing because they were unable to show a sufficient injury. It's the same issue here that there is no injury here. There are three ways in which the corporation could achieve jurisdiction in this court under the declaratory judgment statute. One was a dependent statute, which I think the district court and I think the parties have agreed does not cover this because the pending claims were brought in as separate action. 1367 requires that the pending claim should be brought in the same action as the federal claims. The other one would be in civil jurisdiction where the facts are so intertwined and interdependent that it's essentially the same action. And that does not apply here. And so the district court based its decision on subject matter jurisdiction on the common law authority of a district court to enforce its orders. And the claims that were filed in this action are essentially two sets. One is the declaratory judgment action, which is a claim which is an action of law. The other claims were state court Tufta claims under the Colorado Uniform Fraudulent Transfers Act, which are claims in equity and debt law because they're also claiming damages in that as well. Those claims were stayed through a bankruptcy filing at the time that this appeal was filed and was certified by the district court. So the only claim before this court right now is the declaratory judgment claim. And so the issue for subject matter, for the purposes of subject matter, is whether or not the district court was correct in contending that the declaratory judgment action was an enforcement action. And to that point, if the claim and the declaratory judgment is focused on whether the transfer was void, in other words, whether there was actually a delivery that would have required the registration of the uncertificated security, then why is this a situation where they are actually challenging the contract? I mean, they don't care about the contract. They care about the effect of that supposed transfer of ownership, right? Right. Well, the contract is really more relevant to the second issue in standing. But in terms of the challenge on the declaratory judgment action, they're seeking a judgment that the contract itself is void because there was no delivery under the UCC. Well, they are. And to that point, if that is what they're alleging, then why isn't there ancillary enforcement jurisdiction as it relates to that specific issue? Because the transfer of the shares was not part of the original action. It was not part of the first lawsuit. So it is not an ancillary action. The buyer-purchaser of the shares was not a party to the original action. It was not a party to the writ that was issued in the first action. It was, in my mind, a necessary party, but it was not included in that. The writ did not run against Biowest. On top of that, and most importantly, is that the sale, that the transfer of the stock that Atlas is trying to avoid, that the corporation is trying to avoid, occurred prior to the action of the first court that it's trying to enforce. In other words, it's trying to enforce an action in order of the court and a judgment of the court that occurred after the sale of the ownership interest in the corporation. Okay, focusing on the jurisdictional question for a second, doesn't ancillary jurisdiction speak to the question of whether there is an effort to recover property of the debtor in the hands of a third party? Isn't that the whole premise of ancillary jurisdiction? Well, we don't dispute that. Okay, if we don't dispute that, and the allegation is that Biowest has property as the third party of the individual in this action, then why would it not be an appropriate action, declaratory judgment, to in fact pursue that property in the hands of Biowest through a declaration avoiding the legal effect of the transfer? Because the effort to avoid the legal effect of the transfer, to avoid the contract, is an action that seeks to acquire the shares. It's an action directed at the shares, not the value of the shares. Atlas, as a potential predator of the seller of the shares, has an interest in the value of the shares. And there was a value exchange which the parties agreed was a fair market value of the shares. That's what Atlas has an interest in. Doesn't Atlas have an interest in whether there has been actually an effective delivery of the shares? In other words, the question is whether Atlas has an obligation to register and recognize any alleged transfer of ownership of those shares. Isn't that right? Well, under section 401, it does have an obligation to register uncertificated shares. Well, if there has been the appropriate notice received to them, and they challenge whether there's been the appropriate notice received to them. In fact, let's play off that for a second. In any communication to Atlas, was Atlas actually asked to register those shares? Yes, they were. It was an instruction from Biowest's attorney to register the shares. Atlas refused to do that. Wait a minute. My recollection of that document was that they notified them of the sale or the transfer. Yes. That's different than asking for registration. I'm saying specifically the question of did they ask Atlas to register the shares? Yes, I believe they did. In what document? Well, what document are we talking about? I believe that's in the email that was sent by counsel for Biowest to Atlas, which attached the agreement for sale of the shares, as well as the assignment, which had an immediate effective date on the assignment. Those were conveyed to Atlas the day after the sale, I believe on April 5th of 2018. That was prior to the red or prior to Atlas seeking any effort to collect on those shares. It was, but the point I would ask is would you recognize a distinction between notice of sale and request to register securities? Doesn't the latter speak to what Colorado law would require? I don't know. As I recall the email, the clear purpose, the intent of the email was to notify the issuer of the shares that the shares had been transferred, and that would kick in the Part 4 section of Article 8 on the UCC to register the shares. I think it was clearly intended. I don't have the email in front of me, but I believe there was language in there. Certainly, they gave them notice that the shares had been transferred, and Part 4 requires the issuer of the shares to register a transfer of uncertificated shares. The registration of the transferred uncertificated shares is evidence of delivery. I don't want to get caught up in this in terms of conceding that the issuance of the stock certificates or the registration of the shares is the same as necessary to acquire ownership. I think there's a difference between ownership of an interest in a corporation and the evidence of that ownership, which is the issuance of the stock certificates, or if there are no stock certificates, the issuance of the registration of the uncertificated shares, which is what we're dealing with here. If Atlas was not legally required to register the uncertificated shares, then whether BioWest claims ownership of those shares or not really becomes irrelevant. Does it not? That becomes a problem between BioWest and Kutruz. I don't know how to pronounce his name, but that becomes a problem between those two. If Atlas doesn't legally have an obligation to register those shares, it doesn't matter, right, as far as they're concerned? That's right, and I believe Section 301 of Article 8 of the UCC makes a distinction between certificated shares and uncertificated shares. And the very fact that it recognizes that there are uncertificated shares indicates that you can have an ownership in a corporation without having a stock issued and registered. So there's a difference between ownership, and it was the ownership that actually transfers between the shareholder and my client. But what effect would that ownership transfer be if there was not a legal obligation to register that transfer? Well, it would be binding between the seller and the purchaser. Well, it wouldn't have any binding effect on Atlas, though, would it? Right, well, Atlas had no role in this. I mean, they had no privilege in the contract. They had no standing to challenge what the shareholder and a third party does. We're entering in a situation where it's a real slippery slope, where Atlas is arguing that any corporation should have the right at any time to go on and challenge any securities trade. Are we going to open the door so that a corporation can challenge any securities trade it wants just because they're the ones that are under the UCC are required to register? I understood your brief to say that the stock sale and purchase agreement and the assignment, that alone was enough to transfer ownership. That's our position. Irrespective of what was happening under the UCC article. Right, it's a matter of contract law. All right. What's your best Colorado authority for that position? Well, in the mortgage investment corporation case, which is mentioned in the briefs, it recognizes the equitable transfer of shares. For one, that recognizes that you can have a transfer of shares even if there have been some problems with the… Excuse me, that supports you. Why doesn't it support the others? Well, I feel like it's based on contract law. I mean, the two parties can enter into a contract for the transfer of property. That was not an issue that was actually challenged. But the equitable transfer principle involves if it doesn't impair the rights of a third party, right? And the third party here is Atlas. Right, and its rights were not impaired. I mean, the Atlas can only… Yes, it is. Atlas has shown that its rights were not impaired because it's brought the Tufta claims. I mean, if it wants to challenge the contract, there's a vehicle for it to do that. It's not in federal court. It's in state court challenging or alleging a fraudulent transfer, which is their position. We're more than happy to litigate that issue. It's not going into federal court and challenging a contract to which it was not privy to and trying to void that contract in which it has no interest. Well, counsel, you've got me a little confused, and I need you to help straighten me out. You keep talking about the contract between Biowest and the seller, and it's a matter of this contract between the two of them. But if the court recognizes and declares that it has ancillary jurisdiction to prevent a wrongful transfer or a wrongful judgment or prevent them from getting back their property, I'm not following what you're saying. So what that they don't have an interest in the contract? The court has declared, if it has jurisdiction, we make that decision, that is to prevent an improper transfer of property. What's wrong with that? Because the declaratory judgment claim is an action at law that does not do anything. It doesn't compel or not compel a party to do anything. The Tufta claims do that, but the Tufta claims are not before this court. Those are state claims, and they're not before this court. The only claim that's before this court is the Rule 57, 2201 Declaratory Judgment Act claim. And you can't – that's not – it's not an enforcement action. That's not an enforcement claim. That's only asking for the court to declare the rights of the parties. Let me ask you, what's the standing, if you know, of the merits of the other case involving this that's already been appealed and argued? That will turn on – I believe it will turn on whether or not the court finds it – No, I'm asking – I'm familiar with – I just want to know, has that opinion come out yet? Oh, no. On the Tufta claims? Yes. No, that – the party – the – Mr. Petrubid filed bankruptcy while this case was pending, and that stayed all the claims except the parties agreed to petition the court for certification of the declaratory judgment claim for – on appeal. Because if the court rules in favor of Atlas that there was no transfer, then that moots the Tufta claims. If the court rules in favor of Biowas that there was a – or that the declaratory judgment action was done properly before this court, then we move on to the Tufta claims and trade-offs. So you – I had a question about whether one or the other of those pending matters, this being one of them, should be abated, but I take it that you don't think this case should be. I'm sorry, I can't hear you. You're not arguing that this case should be abated for a decision in the other appeal, then? Oh, no, not at all. That may be the other way around. Well, the other case is not on – it hasn't gone to trial. There's been no – not even been discussed. What about another appeal? Oh, in terms of the other appeal, the first appeal. Right. Yeah, Biowas is not part of that. That appeal just determines, from my understanding, whether or not the shareholder owes money to Atlas, and that's a judgment that occurred after the sale. And is it your view that that other appeal now, whatever the outcome of that, has no impact on this case? It may, in terms of whether or not – in terms of Atlas attempting to foreclose on the value of the shares that the debtor has. So it becomes – and it's in the bankruptcy case. And so what will happen is the debtor's shares, Mr. Kutubis' shares, will go into the bankruptcy case, and the court will liquidate the shares. Atlas does not get the shares. They get the value of the shares, even through the bankruptcy. And so regardless of what the court does in the other appeal, those shares will go into the bankruptcy, except the bankruptcy was – I apologize – the bankruptcy was dismissed. And so those shares will go through the regular collection process that a creditor may have, and we'll have to duke it out with Atlas over the years. So your client, Biowest, isn't involved in that? No. No. Thank you. Thank you. Thank you. Your Honors, may it please the Court, my name is John Root. I'm counsel for Atlas Biologicals. I think that this case is one of those situations where a page of history may be worthwhile at the outset. There was an initial case, Atlas 1, that involved a number of federal claims, including trademark infringement and some other federal claims and also state claims. That case went to bench trial, and after that case went to trial, Mr. Ketrubis transferred his stock to Biowest. In response to this attempted or purported transfer, Atlas filed for a pre-judgment writ of attachment against all of Ketrubis' Atlas stock. The court in the first case issued the writ of attachment. At that point, this case, the case before the court now, was filed by Atlas and included both Ketrubis and his purported transferee, Biowest, as necessary parties in the second amended complaint, two claims asserted. One for declaratory judgment, the other one to set aside fraudulent transfer. After that case commenced, the court in the first case entered its judgment in excess of $2 million in favor of Atlas and against Mr. Ketrubis. Mr. Ketrubis filed bankruptcy shortly thereafter and also filed an appeal. There is an appeal on the first case that has gone up to the Tenth Circuit in front of a different panel. It has been submitted. No findings or, excuse me, no opinion has been issued at this time in that case. And let me ask this question. Yes. If the other panel, and I know nothing about what the other panel is going to do. I'm just asking to try to understand. If the other panel issued a decision tomorrow that reversed on all claims such that Atlas, who prevailed in the district court, now loses, how would that, if at all, impact this case? Because this case's jurisdiction is predicated, as I understand it, on the existence of a judgment in favor of Atlas that it can seek through ancillary jurisdiction to enforce. So if that judgment goes away in the other appeal, would that not have some impact on this case? Oh, of course it would. The judgment in the original case, if it were to go away in your hypothetical, if there were no judgment, and if that was the final stance of that case, this is an important detail, because if it were remanded, things would not change there. But if that was it, if the case was done, then the underlying judgment or the underlying pending case where there's an anticipated judgment that underlies a pre-judgment attachment, if that's all gone, then this case is mooted. Okay, I just want to understand how things... Sure, and that really goes to the jurisdictional issue. The Gaconan case says that courts have jurisdiction in order to function successfully to manage its proceedings, vindicate its authority, and effectuate its decrees. And one of those decrees that we're talking about here is a pre-judgment writ of attachment. I don't think anybody's contesting that a federal district court can issue a pre-judgment writ of attachment against a party in that case related to property, especially in a circumstance where it's being transferred shortly after trial, and you go to hearing, and like the hearing we had in that case, it's in the record, Mr. Gattrubas acknowledged that a judgment would be entered against him in that case. And so that really goes to the issue, well, what's the declaratory judgment, and how does that relate to the Coupe Decline? Well, it relates in two ways. The first issue is when you have the pre-judgment writ of attachment issue, there comes this question, what is the property that is owned by Gattrubas that that writ can attach? And so if you've had a purported transfer of stock, the judge in that case is going to have to evaluate, well, did the transfer actually occur or not? And that's the Article 8 issue, and that's a declaratory judgment issue. And the other thing, and this relates to the standing issue as well, you have a judge who has ruled on the record at the end of a preliminary hearing for the pre-judgment writ that she is going to issue the writ of attachment. Says that on the record in front of all the parties. And prior to that date, Atlas has received communication from litigation counsel for Mr. Gattrubas stating, hey, just to let you know, we transferred the stock to BioWest, your competitor, and attaches a blank stock for transfer power, and subsequently gives us a contract that says, well, actually it's not for cash, it's a trade, and the stuff isn't due for 90 days. At that point, what's Atlas supposed to do? You've got a court order that says there's a writ. Atlas, as issuer of the stock, is the party who is able to comply or not comply with the federal court order. And then subsequently... Well, didn't they provide notice to Atlas before the writ went out? That's the whole point of what prompted Atlas to seek the writ, right? That's right. It was that notice that prompted. But it's important, this detail is important, because it really got muddled when it was presented to you before. That notice was given by Mr. Gattrubas' trial counsel. And then subsequent to the hearing for the writ, then Atlas files its action, and then BioWest's attorney says, hey, Atlas, we demand that you register a transfer on the books. And there you have, right there, in a neat little package, exactly why declaratory judgment is appropriate to deal with the issue of what this writ is or is not grabbing. And I know that it's not directly on point for the facts in this case, but this is a really good application of the Medemun case. A party who's at risk of either governmental or private action, and here we have both, can go and seek a declaratory judgment. That's what that case says. Could I just interject with a couple of questions in response to what you've just been saying? First of all, going back to the potential mootness relative to the other proceedings, let's say that scenario plays out. Wouldn't there still be an issue relating to Atlas' obligations under Article VIII that is still on the table? And given that there was, let's assume there was an ancillary jurisdiction at the beginning of the district court case in the enforcement proceeding, are you willing to give up? Well, I think that's a very good point, and I hadn't had the opportunity to completely think through that issue, so I'm glad you raised it. There really still is an issue there because Atlas, as the issuer under Article VIII, has both legal rights and obligations under Article VIII that are left open, and they're left open just by the defects in the transfer itself. And, you know, if you look at the record, it's undisputed that the serum that was supposed to be transferred in exchange for this in 90 days, that's not contemporaneous under the UCC number one, a promise to deliver something in the future. Second, the undisputed fact is it was never delivered. But that's a state law issue. I mean, that doesn't go to the question of whether there's federal jurisdiction to talk about that. And I think probably the fine distinction between your point, Judge Holmes, and your point, Judge Matheson, is there's still an issue, a live issue under Article VIII, in that scenario where the judgment completely goes away. And by the way, I think it's an unlikely scenario, given that Mr. Petrubis has admitted that a judgment would be entered against him. There could be changes in the judgment. And, Judge Holmes, to your point, if the judgment hypothetically were to go away, there's no federal judgment to enforce through ancillary subject matter jurisdiction. Then I think you can have a situation where the jurisdictional stance of the case changes. But that shouldn't be upsetting to anybody. Standing and jurisdiction can change as facts change over time in a case. Let me ask you this question. An allegation is made, and this particularly relates to the standing issue, that what is involved here is an attempt to address the contract. What is your view on that? In other words, the Atlas has no standing vis-à-vis the contract. Well, there are at least two reasons why I disagree with that argument. The first one is that if that were true, any fraudulent transfer, as long as there's a contract between the transferor and the transferee, that would mean that the third-party predator, who's got a claim that's recognized by statute under the fraudulent transfer statutes, whether it's in Colorado or any other state, wouldn't have standing to challenge the contract between the transferor and the transferee. And that doesn't make any sense, because you have these statutory rights that have been granted in state legislatures all over the country that say, yeah, a predator's got the right to come to court and try to void a transfer based on these statutes. There's also common law claims like that in some states. The second issue is Atlas is the issuer of the stock. And under Article 8, that means that Atlas has obligations under some circumstances not to register a transfer if we're talking about uncertificated stock. And under other circumstances, it may have the power but not the obligation to register a transfer. And yet under other circumstances, the obligation to register a transfer. And help me with this. Is there a situation where if Atlas doesn't have the obligation, legal obligation, to register this transfer, in other words, to register the uncertificated security, then as a matter of law, that transfer of the securities has not taken place, right? It is not something that Atlas is obliged to honor. Am I correct on that? That's correct. Atlas is not obligated to honor that transfer unless all seven of the requirements under Section 8401 are satisfied. Okay. So if that were, in fact, the case, then BioS may have a beef with Mr. Ketrubis, but that has nothing to do with Atlas' issue of whether it has to honor that transfer. That's exactly right. And essentially what I'm trying to understand is at certain points, it appears to me there's been a conflation of the issue of ownership and the validity of this transfer or delivery. And it is the validity of the transfer or delivery that is what Atlas is pursuing in the declaratory judgment action, right? That's right. And this is such an important distinction because under Colorado law, there is an equitable transfer doctrine that's recognized between the transferor and the transferee in some circumstances where a stock transaction between the transferor and the transferee may be recognized, notwithstanding the lack of formalities. But Colorado has never applied that doctrine in cases where the rights of third parties are affected. The mortgage investments case is a good example. There are others. They're cited in my brief. How are third-party rights affected here? It's my understanding that their argument is your rights are affected. How are your rights affected by this? Well, our rights are affected as the issuer. Our rights are affected as a judgment creditor. Our rights are affected because, so as issuer under Article 8, strictly speaking, our rights are also affected as a potential judgment creditor when the pre-judgment writ of attachment was obtained and now as a judgment creditor. We have conflicting, in addition to those rights, we also have conflicting orders because we have an order for a writ of attachment issued by a federal district court judge telling us as issuer, if you are holding this, if you have the right to transfer this on the record, I can't tell Atlas to go and transfer that stock because there's a court order that says there's a writ of attachment. All of those things go into the standing issue. All right. Time is up, counsel. Thank you. Your Honor, any further questions? Thank you, Your Honor. You don't have any more time, I don't think. Okay. Okay, so submitted. Thank you. Thank you, Your Honor.